IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

KATHERINE DALLAS and
ALISA JONES,
    Plaintiffs,

v.                              Case No.: 5:10cv258/RS/EMT

CALHOUN COUNTY SCHOOL DISTRICT,
    Defendant.
_____/

# O R D E R

This cause is before the court upon Defendant's Motion to Compel Discovery (and attached deposition transcript of Edward Thomas, a non-party witness), filed April 29, 2011 (docs. 38, 38-1), and Plaintiffs' response in opposition thereto (doc. 41),[1] filed May 4, 2011. Also before the court are partial transcripts of Plaintiffs' deposition testimony, which were provided directly to the undersigned's chambers as ordered (*see* docs. 43, 48). In short, in the instant motion Defendant seeks an order compelling Edward Thomas to answer certain questions that were posed to him during his deposition but were not answered. Plaintiffs oppose the relief sought by Defendant.

Background

Plaintiffs Alisha Jones and Katherine Dallas (hereinafter "Jones" and "Dallas") initiated this action by filing a complaint against Defendant Calhoun County School District ("CCSD"), alleging race discrimination under Title VII, 42 U.S.C. § 2000e, *et. seq.* (doc. 1). More particularly, Jones and Dallas, who are both Caucasian, allege they were hired by CCSD in August 2008 (Jones) and August 2005 (Dallas) and fired by CCSD in May 2009 (Jones) and June 2009 (Dallas) due to their close "association" with Edward Thomas, an African American male employed by CCSD (*id.*; *see also* doc. 41 at 1).

---

[1] Plaintiff's response is a combined response and motion, titled "Motion for Protective Order and Response in Opposition to Motion to Compel" (*see* doc. 41 at 1).

On April 15, 2011, Jones and Dallas were deposed by Bob Lynn Harris, counsel of record for CCSD in this action; attorney Don Freeman appeared at the depositions on behalf of Jones and Dallas.[2] Attorney Harris posed questions to Jones and Dallas about the nature of their "association" with Edward Thomas, including questions about the existence or extent of any sexual relationship between them. In response to these questions Jones testified that she dates Mr. Thomas—exclusively—and has been dating him since "after late 2006." Jones explained that when she was working for CCSD she and Mr. Thomas were "first . . . just associates," but then they started going to "the bar," became closer friends, and began dating.[3] Jones testified that Dallas and Mr. Thomas were also good friends during Dallas' employment with CCSD and that nearly "everyone at the school" knew that both Jones and Dallas were good friends with Mr. Thomas. Jones stated that she tried to keep her dating relationship with Mr. Thomas a secret (but not the fact of their friendship). Notwithstanding, Jones testified she is convinced people at school knew about the dating relationship because she and Mr. Thomas were seen "hanging out" and there were rumors circulating around the school. One of these rumors, she testified, concerned her, Dallas, and Mr. Thomas being involved in sexual "threesomes." After Jones mentioned the threesomes, Attorney Harris stated, "Tell me about that." Jones then testified that she, Dallas, and Mr. Thomas had engaged in at least one, "but no more than" two, threesomes. Thereafter, Jones answered questions posed by Attorney Harris concerning the threesomes, such as when and where they occurred. Neither Jones nor Attorney Freeman voiced any objection to the questions (except once based on the "form of the question"). Moreover, in the midst of Attorney Harris' questioning in this subject area, Attorney Freeman stated to Jones as follows: "I know it's difficult and I know this isn't a conversation you want to have, but you do have to answer the question[s]." Finally, and relevant to the instant dispute, Jones acknowledged that in her complaint filed with the Florida Commission on Human Relations ("FCHR"), she alleged discrimination by CCSD due to her "romantic

---

[2] Marie A. Mattox is the only counsel of record for Jones and Dallas in this action (although Attorney Freeman, according to the cover sheets of the deposition transcripts, is affiliated with Ms. Mattox's law firm).

[3] Jones testified at her deposition, seemingly inconsistently, that: 1) she began dating Mr. Thomas "after late 2006," and 2) she did not begin dating Mr. Thomas until after her employment with CCSD, which employment—according to the complaint—began in August 2008.

Case No.: 5:10cv258/RS/EMT

relationship with Mr. Thomas."  She also testified that she "possibl[y]" told people at school that she was "physically intimate" with Mr. Thomas and that she believes "Principal Miller knew of [her] romantic relationship with Mr. Thomas."

As previously noted, Attorney Harris pursued a similar line of questioning during Dallas' deposition.  Dallas described the nature of her relationship with Mr. Thomas as a "very good friendship," which friendship was "established" and "fully developed" in late 2005 and early 2006.  She also described her relationship with Mr. Thomas as a "solid friendship outside the professional realm" and noted that Mr. Thomas was a "confidante" and "mentor."  She testified that Jones' relationship with Mr. Thomas began the same way hers did, but Jones' relationship "grew into a more - - more loving" and "boyfriend-girlfriend" type of relationship in approximately early 2007.  Dallas testified that some school employees were aware of Jones and Mr. Thomas' "boyfriend-girlfriend" relationship, but she [Dallas] "did not directly tell anybody about the[ ] relationship."  Dallas surmised the school employees' knowledge must have been based on gossip.  Dallas noted that a cafeteria worker joked around with Jones and Dallas, not only about Jones and Mr. Thomas' dating relationship, but also about gossip concerning Jones, Mr. Thomas, <u>and</u> Dallas, as well as gossip concerning a romantic relationship between Mr. Thomas and Dallas.  Dallas was then asked by Attorney Harris whether she ever had a sexual relationship with Mr. Thomas.  In response, she testified that she never "sle[pt] with Mr. Thomas" and was never "romantically involved" with Mr. Thomas.  Attorney Freeman stated no objection to this line of questioning.

Three days later, on April 18, 2011, Edward Thomas was deposed by Attorney Harris, but at his deposition Attorney Sassan Achtchi (who is also affiliated with Ms. Mattox's law firm but not listed as counsel of record in this action) appeared on behalf of Jones and Dallas.  Attorney Harris began questioning Mr. Thomas about the nature of his relationship with Jones and Dallas.  Mr. Achtchi did not object when Attorney Harris asked Mr. Thomas if had ever dated Jones and Dallas, but when he asked Mr. Thomas if he had ever been "romantically involved" with Jones and Dallas, Attorney Achtchi objected (Attorney Harris asked questions concerning Mr. Thomas' "romantic involvement" with Jones or Dallas three times, and Attorney Achtchi objected each time; the first time he objected based on relevancy grounds, and the second and third times he objected based on "the form of the question") (*see* doc. 38-1 at 3–4).  Following the third question regarding "romantic

involvement" and objection thereto, Attorney Achtchi instructed Mr. Thomas to answer the question (*id.* at 4).  Mr. Thomas then testified that he was romantically involved with Jones but not Dallas, and he admitted to having a sexual relationship with Jones (*id.* at 4–5).  Attorney Harris then asked, "Just so there is no question or confusion about what intimate means[,] did you have a sexual relationship with Ms. Jones?"  (*Id.* at 5).  Mr. Achtchi instructed Mr. Thomas to not answer the question and stated, "I will be moving for a protective order with regard to any sexual relationship that the witness has had.  I don't see the relevance of this.  We can take this up with the judge."  (*Id.*).

CCSD then filed the instant motion to compel, in which it seeks an order compelling Mr. Thomas to answer questions concerning the nature and extent of his association with Jones and Dallas, including whether a sexual relationship existed with either or both.  In support, CCSD notes that in the complaint Jones and Dallas allege they were discriminated against, and ultimately fired, based solely on their association with Mr. Thomas; thus, CCSD asserts, the existence, nature, and extent of their association (and who may have known about their association) is relevant.  Additionally, CCSD contends that Attorney Achtchi improperly instructed Mr. Thomas to not answer deposition questions because a witness can only be so instructed "'when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3)'" (doc. 38 at 6) (citing Fed. R. Civ. P. 30(c)(2)).  Finally, CCSD points to discrepancies between the testimony of Jones and Dallas regarding the nature and extent of their association with Mr. Thomas and asserts that CCSD should be permitted to question Mr. Thomas about the same matters in an effort to ascertain the truth.

In opposing CCSD's motion, Jones and Dallas acknowledge that Attorney Achtchi could not instruct Mr. Thomas to not answer a question based on relevancy grounds (or, apparently, based on "the form of the question"), but they contend CCSD "is being disingenuous in its implication that relevance was the only basis presented for such instruction," since Attorney Achtchi also stated he intended to file a motion for protective order, "which he has done herein [i.e., by filing the instant response to CCSD's motion to compel and incorporated motion for protective order]" (doc. 41 at 4).  Jones and Dallas, asserting that their motion for protective order is timely, contend that Mr. Thomas should not have to answer questions concerning any sexual relationship he might have had

with Jones or Dallas because—they appear to contend—the information is not relevant, but even if it is relevant it is unlikely to lead to admissible evidence (*see id.* at 4–10 (citing Fed. R. Evid. 412 (which excludes, in some circumstances, evidence regarding a victim's sexual behavior or predisposition) and Fed. R. Evid. 403 (which excludes relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury")). Jones and Dallas also contend Attorney Harris should not be permitted to ask deposition questions of Mr. Thomas solely to determine whether they (Jones and Dallas) were truthful during their depositions, contending that "the possible perjury of one or the other Plaintiff is neither a claim nor a defense" in this action (*id.* at 10–11).

        Discussion

        The Federal Rules of Civil Procedure allow discovery of any relevant, non-privileged material that is admissible or reasonably calculated to lead to admissible evidence. Fed. R. Civ. P. 26(b)(1). The overall purpose of discovery under the Federal Rules is to require the disclosure of all relevant information so that the ultimate resolution of disputed issues in any civil action may be based on a full and accurate understanding of the true facts, and therefore embody a fair and just result. *See* United States v. Procter & Gamble Co., 356 U.S. 677, 682 (1958). Courts construe relevancy "broadly to encompass any matter that bears on, or that reasonably could lead to other matter[s] that could bear on, any issue that is or may be in the case." Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978) (citing Hickman v. Taylor, 329 U.S. 495, 501 (1947)). Relevant information is discoverable even if it is not admissible at trial, "if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). The Federal Rules of Civil Procedure strongly favor full discovery whenever possible. *See id.*; Moore v. Armour Pharmaceutical Co., 927 F.2d 1194, 1197 (11th Cir. 1991). In addition, "discovery is not limited to issues raised by the pleadings." Oppenheimer, 437 U.S. at 351. Finally, discovery is expected to be accomplished voluntarily with minimal judicial intervention. *See, e.g.,* Bell v. Brary and Gillespie, LLC, No. 6:05-CV-355-ORL-19JG, 2006 WL 923741, *1 (M.D. Fla. 2006).

        As an initial matter, regardless of whether Attorney Achtchi's instruction to Mr. Thomas (to not answer certain deposition questions) was proper, it is not clear to the undersigned that he had any authority to give the instruction. Mr. Thomas is a non-party witness, and he is not represented

by Mr. Achtchi (or anyone else at the Mattox law firm) in this action.[4]  Likewise, it is unclear whether Attorney Mattox has standing to seek a protective order on behalf of a non-party.  The court, however, need not decide any issue related to standing, because CCSD's motion is easily decided on its merits.

First, it is evident that the information CCSD seeks from Mr. Thomas is relevant.  Jones and Dallas allege they were fired because of their close association with Mr. Thomas and only because of this association.  Thus, whether an association existed is relevant (i.e., if no association existed, it could not be a basis for Jones and Dallas' firings).  Similarly, if an association existed, the extent, timing, duration, and nature of the association—including whether it was sexual in nature—is relevant to questions such as who knew about it, talked about it, observed it, gossiped about it, reported it to CCSD officials, etc., such that the offiical(s) responsible for firing Jones and Dallas might have known about the association and used it as a basis to fire them.[5]  Moreover, Jones specifically alleged in her complaint filed with the FCHR that she was fired because of her romantic or intimate relationship with Mr. Thomas, and she freely testified about that relationship in her deposition.  Jones and Dallas' argument that Mr. Thomas cannot be questioned about the same intimate relationship is illogical and unpersuasive.  Moreover, Jones <u>volunteered</u> during her deposition that she engaged in threesomes with Dallas and Mr. Thomas, following which she was specifically instructed by her counsel to provide further information about them; yet her counsel now argues that Mr. Thomas, a non-party, cannot be questioned about the same thing that Jones was specifically instructed to answer.  Likewise, Dallas testified at her deposition about her romantic involvement with Mr. Thomas, or lack thereof, without any objection by her counsel.  It thus appears that Jones and Dallas' counsel <u>previously</u> recognized the propriety and relevance of Attorney Harris' questions, as the undersigned does now.

Having determined that the information sought by CCSD is relevant, the next question is whether it is privileged.  Jones and Dallas contend the information is privileged and cite Federal

---

[4] The Mattox law firm apparently represents Mr. Thomas in a different matter involving the Liberty County School District (*see* doc. 38-1 at 4).

[5] This is not to say that graphic or very specific, intimate sexual details in this case would be relevant or discoverable.

Case No.: 5:10cv258/RS/EMT

Rule of Evidence 412 in support.  In relevant part, Rule 412 states: "The following evidence is not admissible in any civil . . . proceeding involving sexual misconduct . . . :  (1) Evidence offered to prove that any alleged victim engaged in other sexual behavior [or,] (2) Evidence offered to prove any alleged victim's sexual predisposition."  Fed. R. Evid. 412(a).  Initially, this case does not appear to concern a "proceeding involving sexual misconduct," such that Rule 412 is applicable.  But even if this case is construed as such, Jones and Dallas have failed to establish that Mr. Thomas is a "victim," as that term is used in Rule 412.  Thus, evidence concerning his sexual behavior or predisposition is not subject to the exclusions set forth in Rule 412.  Indeed the Advisory Committee Notes to the 1994 Amendments to Rule 412 suggest Mr. Thomas is <u>not</u> a "victim" (stating, in relevant part, that "Rule 412 does not, however, apply unless the person against whom the evidence is offered can reasonably be characterized as a "'victim of alleged sexual misconduct.'").[6]  Finally, the undersigned concludes that evidence concerning Mr. Thomas' sexual relationships with Jones or Dallas is likely admissible or, at a minium, that Mr. Thomas' testimony about those relationships is discoverable because it is reasonably calculated to lead to admissible evidence.

For the foregoing reasons, CCSD's motion to compel will be granted.  And, since the discovery deadline has now passed, the parties shall immediately convene and resume Mr. Thomas' deposition (at CCSD's discretion, the deposition may be conducted in-person or telephonically).  At the deposition counsel for CCSD may question Mr. Thomas about the existence and timing of any sexual relationship between him and/or Jones and Dallas.

Lastly, the court notes that CCSD has requested an award of fees and expenses incurred in bringing its motion to compel (*see* doc. 38 at 10), and the court finds that CCSD is <u>likely</u> entitled to such an award (*see* Fed. R. Civ. P. 37).  Jones and Dallas, however, will be given an opportunity to be heard on the matter of an award of fees and expenses before a ruling is made (*see id.*).

Accordingly, as set forth in the body of this order, it is **ORDERED** that:

---

[6] Jones and Dallas assert that they also are "victims," and they—along with Mr. Thomas—seek a "protective order preventing [CCSD] from inquiring into sensitive matters regarding sexual relationships they have had with each other and/or others" (doc. 41 at 2).  Jones and Dallas' depositions, however, have already concluded, so the undersigned cannot issue an order preventing CCSD from inquiring into certain matters at deposition.  To the extent Jones and Dallas seek an order prohibiting the <u>admission of trial evidence</u> about their sexual relationships, such an order must be sought from the district court at the appropriate time.  The only matter the undersigned need decide here is whether Mr. Thomas must answer certain deposition questions.

Case No.: 5:10cv258/RS/EMT

1.  Defendant's Motion to Compel Discovery (doc. 38) is **GRANTED**.

2.  Plaintiffs' Motion for a Protective Order (doc. 41) is **DENIED**.

3.  On or before **JUNE 10, 2011**, Defendant shall submit documentation of fees or expenses incurred in bringing the instant motion to compel. Within **TEN (10) DAYS** of receipt of Defendant's documentation, but no later than **JUNE 20, 2011**, Plaintiffs may, but are not required to, file a notice opposing sanctions and outlining therein any objection to the imposition of sanctions or to the reasonableness of the amounts claimed by Defendant, or both.[7]

**SO ORDERED** this 23rd day of May 2011.

/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**

---

[7] Attorney Mattox asserts that Attorney Harris acted "disingenuously" by suggesting (in the motion to compel) that Attorney Achtchi's objections during Mr. Thomas' deposition were based only on relevance. What Ms. Mattox is really saying it that Attorney Harris deliberately attempted to mislead the court.

In no case does the court take such accusations lightly. In the instant case, the court is particularly concerned by Ms. Mattox's contention because its own review of the deposition transcript reveals that Attorney Harris' characterization of Attorney Achtchi's objection is accurate and not misleading. Although Mr. Achtchi mentioned the possibility of moving for a protective order, he said it in the "same breath" as his objection based on relevance (*see* doc. 38-1 at 5). He did not assert, as Attorney Mattox now asserts, that a protective order was necessary to "preserve a privilege," and he did not state any objection based on a privilege (his objections were based on "relevance" or "form"). Moreover, despite the fact that Attorney Achtchi stated he would seek a protective order, no such order was sought until after CCSD filed the motion to compel.

Should Jones and Dallas choose to be heard on the matter of an award of fees and expenses to CCSD, they should be aware that, in light of the record and the above observations, the court finds Ms. Mattox's representations extremely troubling. Consequently, absent a compelling argument from Plaintiffs of which the court is not now aware, the court is very likely to award fees and expenses to Defendant. Such an award would be for all time spent by Defendant in connection with its motion. In other words, if Defendant replies to Plaintiffs' response in opposition and the court ultimately grants Defendant's request for awards fees and costs, Plaintiffs will be responsible for any additional accrued fees as well.